## BANK OF WASHINGTON v. MOORE.
### (No. 793-4799.)

Commission of Appeals of Texas, Section B. June 25, 1927.

1. **Waters and water courses ☞258—Foreclosure of lien for water rents held not binding as to owner not party.**

Where conveyance was made providing for furnishing of water for irrigation and for ·rents and charges to be paid therefor, foreclosure of liens for water rents *held* not binding, as against owner who was not made party to· suit.

2. **Contracts ☞10(5)—Contract in deed for furnishing of water for irrigation and payment therefor held not wanting in mutuality.**

Contract evidenced by deed and providing for furnishing of water for irrigation by grantor and for payment of rents and charges for such water by grantee *held* not wanting in mutuality.

3. **Vendor and purchaser ☞312—Purchase-money note is conclusively presumed paid after four years, in absence of recorded contract of extension (Rev. St. 1925, arts. 5521, 5522).**

Where action was not brought on purchase-money note for more than four years after maturity, it is conclusively presumed to have been paid, in absence of contract of extension filed for record in county where land was situated, in view of Rev. St. 1925, art. 5521; article 5522 being inapplicable.

4. **Quieting title ☞7(4)—Landowner who was not party to suit foreclosing lien on land held within rights in filing suit to remove ·cloud.**

Where judgment was rendered foreclosing lien on land, and its sale was threatened, in judicial proceeding to which owner was not party, she was within rights in filing suit to remove cloud.

5. **Parties ☞38—Landowner has no duty to make herself party to suit to foreclose lien on her land.**

Landowner *held* to have no legal duty to make herself party to suit to foreclose lien on her land, even if she had knowledge that such suit had been ·brought against another.

6. **Husband and wife ☞137(7)—Husband cannot place valid lien on wife's separate estate by act in which she does not join by instrument in writing (Rev. St. 1925, art. 4614).**

Husband has no control over land which is part of wife's separate estate, and cannot place any valid lien thereon by act in which wife does not join by instrument in writing, in view of Rev. St. 1925, art. 4614.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by Mrs. Helen Moore against the Bank of Washington. Judgment for plaintiff was affirmed by the Court of Civil Appeals (290 S. W. 184), and defendant brings error. Affirmed.

Spears & Montgomery, of San Benito, for plaintiff in error.

W. T. Carlton, of Harlingen, for defendant in error.

SHORT, J. We do not think that we can improve upon the statement of the case made by Chief Justice Fly of the Court of Civil Appeals, and it appearing necessary that this statement be incorporated as a part of this opinion, we adopt it, adding, however, that the trial court rendered a judgment in favor of the defendant in error, which judgment was by the Court of Civil Appeals affirmed. Judge Fly's statement is as follows:

"This is a suit by appellee to· remove a cloud from her title to two· tracts of land, one in block 149, containing 160 acres of land, and the other in block 148, containing 65 acres of land, being parts of the Concepcion de Carricitos grant in Cameron county, as surveyed and subdivided for the San Benito Land & Water Company and others, said cloud consisting of a judgment of foreclosure of a lien on said land in a suit styled Bank of Washington v. S. C. Moore, in the district court of the Twenty-Eighth judicial district. Appellee alleged that she was not a party to the suit, did not join in the execution of the promissory note on which the suit was based, and that the land was her separate property, and was before, at the time, and after the judgment was obtained and the land foreclosed by appellant. It was alleged that appellee was a feme sole, but the petition fails to disclose her relation to S. C. Moore, or whether he was dead or alive. It might be inferred that S. C. Moore had been or was her husband, although he is described as 'one S. C. Moore.' It appears from the petition that S. C. Moore acknowledged, in a note executed by him to the San Benito Land & Water Company that the note was secured by a lien on the land, for water charges on said land herein described. The cause was tried by the court, without a jury, and judgment was rendered that the lien foreclosed against said land, in the district court of the Twenty-Eighth district, be set aside and held for naught, and that appellee be quieted in her title to the land.

"The court found that on October 23, 1907, S. C. and Helen Moore were man and wife, and on the same day the land in question was purchased by S. C. Moore from the San Benito Land & Water Company. On September 2, 1910, S. C. Moore and Helen Moore conveyed the land to Willie Mayfield and Lola Paine. On November 11, 1910, the Moores· were divorced from each other, and on January 29, 1912, Helen Moore conveyed an undivided one-half interest in the land to S. C. Moore. On January 30, 1912, S. C. Moore and Helen Moore for the second time were married to each other. On April 29, 1913, S. C. Moore gave a note to the San Benito Land & Water Improvement Company for $575.75, and in said note recited that it was given for water charges and was secured by a lien on the 225 acres of land in question. The appellant acquired the note for a valuable consideration in ·due course of trade, and on October 30, 1917, sued on it and obtained judgment for the amount and

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

foreclosure of the lien. On May 10, 1919, appellee sued for and afterwards obtained a cancellation of the deed she had executed to S. C. Moore for one-half the land, and then on January 5, 1921, appellee again applied for a divorce from S. C. Moore and on March 8, 1923, obtained the divorce. The court did not disclose whether Willie Mayfield and Lola Paine ever reconveyed the land to appellee or still held it. The statement of facts, however, shows that S. C. Moore, on September 2, 1910, conveyed the land to Willie Mayfield and Lola Paine, and they, on June 15, 1911, conveyed the land to appellee, and that deed was duly recorded on June 21, 1911. This was during the interval between the first divorce and the remarriage. The day before the second marriage, appellee, while a feme sole, conveyed to S. C. Moore a one-half undivided interest in the 225 acres of land, and on April 13, 1913, S. C. Moore gave the note and lien on the whole of the 225 acres for the water charges of 1912. In the judgment assailed by appellee, the court held that the lien was a part of the purchase money. That was based on a recital in the deed reserving a lien on the land for water furnished the landowner." 290 S. W. 184.

Writ of error was granted by the Supreme Court because of an allegation in the application that the decision of the Court of Civil Appeals in this case is different from that of the Supreme Court in Cathey v. Weaver, 111 Tex. 515, 242 S. W. 452, and also from the decision of the Court of Civil Appeals in Dickinson v. Dysart, 237 S. W. 615, on account of which it will be necessary to discuss both of those cases in reaching the proper conclusion in this case.

[1] However, it is our opinion that the decision of this case must rest upon a proper construction of the language used in the conveyance of the land by the San Benito Land & Water Company to S. C. Moore, dated October 23, 1907, and of the language used in the promissory note executed by S. C. Moore in favor of the San Benito Land & Water Company and by the latter indorsed to the plaintiff in error. The conveyance above mentioned recited a cash payment and the execution and delivery by S. C. Moore to the San Benito Land & Water Company of three purchase-money notes. These notes were afterwards paid. In addition to the consideration above mentioned, the statement of facts shows that the following language was inserted in the deed as a part of the consideration, to wit:

"Covenants, agreements, stipulations, and reservations with reference to said land and with reference to furnishing water for the irrigation of said land, and payments for such services herein set forth, the agreements, covenants, and stipulations herein made by grantee and the payments herein provided for being a part of the purchase price for said land, and running with the land, and being binding upon said grantee, and all persons claiming by, through, or under him."

This deed also provided for the furnishing of water for the irrigation of the land and for the rents or charges to be paid therefor, and contained the further provision:

"To secure the payment of the fixed water rent and of the water charge for plaintiff's crops, and of the other payments and expenses herein provided for, a lien is retained and acknowledged upon the land herein conveyed, and the company shall have a lien upon all crops raised upon the land to secure said rent and charges. If the contract with reference to the amounts of the payments for water rent, or with regard to any of its other terms, should hereinafter be modified, such modification shall not impair or affect the lien hereby retained to secure the fixed water rent, or other water charges hereinbefore set out, or which may hereinafter be fixed and determined upon."

The deed then concluded with the following language:

"To have and to hold the above-described premises as subject to the lien which has been and is hereby expressly retained to secure the payment of the notes hereinbefore described, and rents, charges, and expenses hereinbefore set out, and subject to the reservations, easements, obligations, and covenants herein detailed, unto the said S. C. Moore, his heirs and assigns forever. Whenever in this conveyance the word 'grantor' or the word 'company' is used, it means the San Benito Land & Water Company and its successors and assigns, and whenever the word 'grantee' is used, it means the purchaser, his heirs, executors, and assigns."

The above-mentioned promissory note upon which the plaintiff in error recovered a judgment against S. C. Moore and foreclosed a lien upon the lands in controversy is in the usual form, and contains in addition this language:

"This note is secured by a lien for water charges for the year 1912 on 225 acres of land in Cameron county, Texas, being block 149 and that part of block 148 south of the St. L., B. & M. Ry. of the San Benito Land & Water Company's subdivision of Concepcion de Carricitos grant in Cameron county, Texas, which said lien is set out in a deed by the San Benito Land & Water Company conveying said land, and this note shall not be held to change the terms and provisions of said deed in any other respect except as herein expressly provided."

[2] The real and vital question to be determined is as to the validity and binding effect of the language used in said deed and in said note *upon the defendant in error with reference to the land,* since her title thereto emanates from the conveyance of the San Benito Land & Water Company to S. C. Moore. While the record does not disclose what obligations the San Benito Land & Water Company assumed in the conveyance above mentioned in consideration of the obligations assumed by the grantee and his assigns in said instrument, it may safely be assumed that the company did agree

at least to use its best efforts to furnish water to the *owner* of said land, and upon this assumption, in the absence of any plea of failure of consideration, the contract evidenced by said deed is not wanting in mutuality, and, if otherwise valid, is binding not only upon S. C. Moore, but upon his assigns, unless the rights of the plaintiff in error have been defeated by some negligence on its part to bring suit against the *rightful owner* of the land so as to avoid the force of the statute of limitations.

[3] The Court of Civil Appeals held that the note due September 1, 1913, upon which suit was not filed until October 30, 1917, affirmatively shows the note to have been barred by the four-year period provided by article 5521, Revised Statutes of 1925, which, among other things, provides:

"Purchase money or mortgage lien notes relating to real estate shall conclusively be presumed to have been paid after four years from the date of maturity of such notes unless extended as provided by law."

Whether we assume that the note executed by S. C. Moore upon which judgment was rendered was a part of the purchase money of the land or a mortgage lien thereon, the record conclusively shows that at the time the suit was instituted by the plaintiff in error against S. C. Moore more than four years had elapsed from the date of maturity, and by virtue of this article of the statute the demand evidenced by the note was conclusively presumed to have been paid in the absence of a contract of extension duly signed and acknowledged as provided for in the law relating to the execution of deeds of conveyance by the party or parties obligated to pay such indebtedness and filed for record in the county clerk's office in the county in which the land is situated. No such contract of extension appears in the record. Neither does the record disclose either pleading or proof of a situation occupied by the plaintiff in error as an innocent purchaser. The plaintiff in error asserts it occupies the same legal position and was entitled to the same legal rights as the water company from whom it acquired by purchase for a valuable consideration the note upon which the judgment was rendered. That judgment is a valid one as against S. C. Moore, but it could have no legal force by virtue of which the property of the defendant in error could be subjected to the payment of the judgment against S. C. Moore; in other words, the defendant in error was a necessary party to that suit, in so far as that part of the judgment wherein it seeks to have her property sold for the debt of S. C. Moore.

No provision of article 5522 of the present statutes, which was article 5695 of the Statutes of 1911, is applicable to the facts in this case. That article deals with liens which otherwise would have been barred after a certain date under laws existing prior thereto, and relates to a series of promissory notes to secure the payment of which the owners claimed to have valid liens on land. The lien asserted in this case, whether a vendor's or mortgage lien, has for its basis a promissory note that was not barred until four years after September 1, 1913.

[4-6] The opinion of the Court of Civil Appeals, which plaintiff in error says is in conflict with Cathey v. Weaver, supra, is not, in our opinion, in any way conflicting with the opinion in that case. The facts are entirely different. In the case at bar, the plaintiff in error has no transfer in writing duly acknowledged from the water company, the original owner of the land, of its interest in the land, if any it had by virtue of the recitations in the original deed of conveyance. At most, the plaintiff in error is an ordinary mortgage lienholder. Its claim to have this lien foreclosed is based upon the promissory note of a person shown by the record to have been in reality a stranger to the title of the land upon which the lien is asserted. The land was a part of the separate estate of the defendant in error. The answer of the plaintiff in error does not even allege that it acquired the note upon which it bases its right to have this land sold before maturity of the note, though the pleading in the original case against S. C. Moore does so allege. Neither is there any allegation in the answer to the effect that S. C. Moore was the record owner of any portion of the land and that it relied upon this apparent ownership in purchasing the note. It bases its right to have the land belonging to defendant in error sold to pay the judgment based on the note executed by S. C. Moore apparently upon an allegation that the note was executed with the consent of the defendant in error (which was not proved), coupled with the further allegation that the note represented a debt due for water furnished to crops grown on the land by the water company in pursuance of the terms of the original contract between S. C. Moore and the water company. But it must be remembered that the demand of the plaintiff in error was based upon the promissory note of S. C. Moore. It was not based upon an obligation of the defendant in error, however evidenced, to pay for the water furnished the crops grown on her land. Even if it had been so based, in the absence of making defendant in error a party, the judgment rendered on the note as it was in this case executed by S. C. Moore could not bind her or her property. Assuming that the lien mentioned in the original deed of conveyance is a valid one against the land for water furnished to its owner, yet, in order to foreclose such lien against such owner by judicial proceeding, the latter would have to be made a party and proper allegations made and sufficient proof introduced to justify the rendi-

tion of a valid judgment enforceable against her. Nothing of this kind appears in this case. Upon the contrary, the suit is based upon the note of a stranger to the title of the land upon which the lien is sought to be fixed, and to satisfy the judgment thus obtained it is proposed to appropriate the lands belonging to another. To permit this to be done would be to allow one's property to be taken without due process of law. Had the defendant in error been made a party to the suit against S. C. Moore, she could have asserted the same legal rights in order to protect her property in that suit as she has in this. When a judgment was rendered foreclosing a lien upon her land and its sale threatened in a judicial proceeding to which she was not a party, she was within her rights in filing this suit. The record does not even disclose that she had knowledge of the suit brought against S. C. Moore. Even if she had had such knowledge, she was under no legal duty to make herself a party to that suit. The land being a part of her separate estate, her husband had no control over it, and, of course, could not place upon it any valid lien by any act of his in which she did not join by an instrument in writing. The law provides that the wife shall have the sole management, control, and disposition of her separate property, though it further provides that she cannot incumber or convey her lands without the joint signature of the husband. Article 4614, Revised Statutes 1925.

In the case of Cathey v. Weaver, the suit involved the validity of liens by virtue of unpaid vendor's lien notes by the parties wherein the vendor's lien was in existence unless the right to sue for the land was barred under the provisions of article 5522. In that case it was held the notes were not barred against one holding the superior title to land retained in the deed of conveyance where the note was payable October 1, 1907, the deed being of the same date, under the proviso of the article giving twelve months after the effective date of the Act of June 30, 1913, to institute suit thereon. It will thus be seen that the opinion in the case of Cathey v. Weaver had reference to an entirely different state of facts from those in the case at bar.

A similar situation arose in the case of Dickinson v. Dysart, supra, wherein the Court of Civil Appeals held that the holder of vendor's lien notes executed August 25, 1909, and maturing four years from their dates, was given four years after article 5695 of the Revised Statutes of 1911, as amended by the Acts of the Thirty-Third Legislature at its special session (chapter 27), became a law, and that an action brought December 14, 1914, was not barred by limitations. We do not believe there is any conflict between the opinion of the Court of Civil Appeals in this case and the opinion in the case of Dickinson v. Dysart, because of the dissimilarity in the facts of the two cases.

Believing that the conclusion reached by the Court of Civil Appeals in this case is the correct one, we recommend that its judgment be affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals affirmed as recommended by the Commission of Appeals.